T.C. Memo. 2012-25

UNITED STATES TAX COURT

ROBERT JAY AND ELIZABETH T. BROOKS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3430-09.               Filed January 26, 2012.

Thomas Edward Brever, for petitioners.

David L. Zoss, for respondent.

MEMORANDUM OPINION

HOLMES, Judge:  Robert Brooks received a loan from his
employer, Dain Rauscher, Inc. in 1998.  Dain promised to forgive
the entire loan--including accrued interest--if Brooks stayed
employed for the full five-year term of the loan.  Brooks kept
his word and stayed employed by Dain.  Dain kept its word and
forgave the loan.  Brooks and his wife included the forgiven loan

principal and accrued interest as income on their 2003 joint return.  The parties agree that the forgiven principal was income, but Brooks now claims that the forgiven interest was not.

## Background

Dain recruited Brooks as a stockbroker in March 1998.  As part of his compensation, Dain lent him more than $500,000. Brooks promised in return to repay Dain the principal amount of the loan plus interest on the unpaid balance.  The written loan agreement and promissory note required Brooks to repay the loan in five annual installments of slightly more than $100,000 at the end of March in each year from 1999 through 2003.  Dain, however, promised to forgive the installment of principal and any accrued interest due each year if Brooks remained a Dain employee.

The deal worked in some peculiar ways.  An internal Dain memorandum from March 1998 said that before each year's payment became due, Dain would issue Brooks a check for the amount of the upcoming installment of principal plus accrued interest and minus tax withholding.  In turn, Brooks was to write a check to Dain for the installment amount and accrued interest.  The memorandum also said that the amount of the check Brooks would write to Dain would be larger than the one he received from Dain because of tax withholding.  It also said that the check from Dain "is considered income by the IRS."  Despite what the memorandum said, and despite the fact that Brooks undeniably remained a Dain

employee throughout the five-year term of the loan, there is no evidence in the record that the parties exchanged checks or that Dain withheld any tax upon forgiving part of the loan each year.[1]

The parties instead stipulated that in 2003 Dain forgave the entire loan and included $650,342.35[2] (the sum of $506,300 in principal and $144,042.35 of accrued interest) on Brooks's March 14, 2003 pay statement.[3]  Dain also included the canceled debt as wages on Brooks's Form W-2 for 2003.  Brooks reported all of the wages on this Form W-2 on his 2003 return, which he filed in May 2006.

Since Brooks reported the income from the forgivable note agreement on his 2003 return, that wasn't the reason the Commissioner audited his return.  The notice of deficiency instead focused on receipts that Brooks reported and losses that he claimed on numerous stock sales, and on his assertion that he

---

[1] This may be why Brooks never reported any income from the forgivable note agreement before tax year 2003.

[2] There was a typo in the stipulation:  Brooks's March 14, 2003 pay statement says $650,342.35, not $650,352.35.  Since the stipulation is clearly contrary to the facts disclosed by the record on this tiny point, we are not bound by it.  See Svoboda v. Commissioner, T.C. Memo. 2006-235.

[3] The pay statement listed federal withholding of $175,592.43 for the pay period and $192,294.88 for the year to date, but Brooks's 2003 return listed federal income tax withheld of only $20,694.  There is no other evidence in the stipulated facts that Dain actually withheld any federal tax from the $650,342.35 in forgiven debt, and we specifically find that it did not do so.

should be taxed on these sales as a trader and not as an investor.  See King v. Commissioner, 89 T.C. 445, 458-59 (1987) (explaining difference between trader and investor for tax purposes).  The parties have since settled all those issues, and the only question left for us to answer is the proper tax treatment of the forgiven interest on the forgiven loan.  Brooks claims he didn't have to report this substantial amount-- $144,042.35--as income.

He and his wife were Minnesota residents when they filed their petition.  The parties submitted the case for decision under Rule 122.[4]

## Discussion

### I.  Taxability of Forgiven Loan in 2003

The parties both assume that figuring out whether Brooks's forgiven interest is taxable income is an issue only for the 2003 tax year.  But that's not so clear to us.  Before we decide the taxability of forgiven interest, we normally look first at the character and timing of the forgiven loan to make sure that we have the proper tax year at issue.  See OKC Corp. v. Commissioner, 82 T.C. 638, 647-49 (1984) (court must determine

---

[4] All Rule references are to the Tax Court Rules of Practice and Procedure.  All section references are to the Internal Revenue Code in effect for the relevant tax year, unless otherwise indicated.

whether discharge of indebtedness results in "pure" income or indirect payment for services, property, or something else).

This case seems quite similar to Winter v. Commissioner, T.C. Memo. 2010-287. In Winter, we held that the bonus advance that Winter received from his employer was compensation for services rather than a loan. We reasoned that the bonus advance was not a loan because its primary purpose was to induce Winter to provide personal services, and his obligation to repay the advance was conditional--he had to repay it only if he quit or was fired for cause within five years. See id. Because we found that the advance was income and not a loan, we held that it was taxable to Winter in the year he received it. See id. (citing section 451(a) and section 1.451-1(a), Income Tax Regs.).

In form, the agreement between Brooks and Dain appears to be a loan: There is a note evidencing indebtedness and a stated interest rate. See, e.g., Gales v. Commissioner, T.C. Memo. 1999-27. In substance, however, the up-front payment looks a lot like the advance in Winter--one that we held was compensation for personal services subject to a conditional obligation to repay. Brooks received the payment from Dain as part of his compensation arrangement and only had to repay it--on a *pro rata* basis--if he didn't stay employed.

This is a potential problem for the Commissioner. If Brooks's "loan" was compensation for personal services subject to

a conditional obligation to repay, then Brooks should have reported the income from the forgivable note agreement in 1998-- the year he received the money--and not 2003. And 1998 is not the tax year before us.

There are limits to what parties can stipulate, and pure statements of law that are just plain wrong may well be out of bounds. But we read the stipulation in this case as an agreement that Brooks received at least $506,300--the principal of the loan--as income in 2003. Because neither party has argued that the stipulation on this mixed question of fact and law doesn't bind us, we deem this issue waived.[5] See Buchsbaum v. Commissioner, T.C. Memo. 2002-138; see also Bartel v. Commissioner, 54 T.C. 25 (1970) (applying "duty of consistency" in similar circumstances even without stipulation).

We will therefore, like the parties, avert our eyes from this problem, and turn to the proper treatment of the forgiven interest.

## II. Deductibility of Forgiven Interest

The Code generally treats the discharge of indebtedness as income. See sec. 61(a)(12). The reason for the rule is this: A borrower who doesn't have to pay back a loan gets an economic benefit that is an accession to wealth. See, e.g., United States

---

[5] For the same reason, we also need not decide whether Brooks should have reported discharge-of-indebtedness income each year that part of the loan was forgiven.

v. Kirby Lumber Co., 284 U.S. 1, 3 (1931); Toberman v. Commissioner, 294 F.3d 985, 988 (8th Cir. 2002), affg. in part and revg. in part T.C. Memo. 2000-221. Discharge-of-indebtedness income includes both forgiven loan principal and interest. See Jelle v. Commissioner, 116 T.C. 63, 66, 69-70 (2001).

The general rule has exceptions, and section 108(e)(2) is one of them: It tells us that a debtor will not realize discharge-of-indebtedness income to the extent payment of the liability would've given rise to a deduction. It follows that a cash-basis taxpayer will not realize discharge-of-indebtedness income upon the cancellation of accrued interest that--had it been paid--would've been deductible. See Owens v. Commissioner, T.C. Memo. 2002-253 n.4, affd. in part, revd. in part and remanded on other grounds 67 Fed. Appx. 253 (5th Cir. 2003).

Our task, then, is to determine whether Brooks would've been able to deduct the accrued interest on the loan had he repaid it. Brooks has the burden of proof here, see Rule 142(a), which means he must have records sufficient to verify his claims, see sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

That turns out to be quite important here, because Brooks argues that the interest that Dain forgave in his case would've been deductible under section 212. This section allows individuals to deduct all the ordinary and necessary expenses paid or incurred for the production of income. (Note that he

doesn't argue that the interest would've been deductible under section 162 as a trade or business expense.)  He says the loan's purpose was to give him a stake to showcase his skills as a stockbroker to produce income for himself and his wife.  His 2003 return does show a large number of stock trades, and he points to them as proof that he used the loan to buy a portfolio of stocks. He argues that this is enough to prove that the forgiven interest would've been deductible as an expense for the production of income.

The Commissioner has two counterarguments.  The first is that Brooks hasn't even tried to trace the flow of money from the loan to his investments.  Without evidence showing use of the loan proceeds to buy stocks or securities, the Commissioner argues Brooks hasn't proven he would've been entitled to a deduction under section 212.

The Commissioner is correct.  We generally allocate interest expense to the associated debt.  See Kudo v. Commissioner, T.C. Memo. 1998-404, affd. 11 Fed. Appx. 864 (9th Cir. 2001).  And we allocate debt by tracing disbursements of the loan proceeds to specific expenditures.  See id.  We therefore have to look at how Brooks used his loan proceeds to decide whether the interest related to that debt would've been deductible.  See Hahn v. Commissioner, T.C. Memo. 2007-75; sec. 1.163-8T(c)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987).

Brooks hasn't given us enough. The only proof he points to is the long list of stock transactions that he attached to his 2003 return. From this he asks us to find that he must have used the money that Dain lent him in 1998 to assemble a stock portfolio. This is quite a stretch, especially considering that the record is devoid of any bank-account records, brokerage-account records, or other evidence supporting his claim. See sec. 1.163-8T(c)(3) through (5), Temporary Income Tax Regs., 52 Fed. Reg. 25001 (July 2, 1987). We therefore agree with the Commissioner that Brooks has not proven he would've been entitled to a deduction under section 212.

The Commissioner contends as an additional ground that even if Brooks had shown he used the loan proceeds to buy stock, he still isn't entitled to a deduction because of section 163(d)(1). Section 163 generally allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." Sec. 163(a). Section 163(a) has its own exceptions, and one of them, section 163(h), says that an individual taxpayer may not deduct personal interest. See sec. 163(h)(1). The exception has its own exception, and excludes from the definition of personal interest "investment interest." See sec. 163(h)(2)(B).

This is an important exclusion, because section 163(d) limits the deduction of investment interest to a taxpayer's net investment income--the excess of investment income over

investment expenses--for his tax year.[6]  This limitation

overrides not only section 163, but all of chapter 1 (which

includes section 212).  See sec. 163(d)(1) ("the amount allowed

as a deduction under this chapter for investment interest for any

taxable year shall not exceed the net investment income of the

taxpayer for the taxable year"); Robinson v. Commissioner, 119

T.C. 44, 48-49 (2002).  This means that even if Brooks had been

entitled to an interest deduction under section 212, section

163(d) would've limited it.[7]

Section 163(d)(3)(A) defines investment interest as interest

on indebtedness that is properly allocable to property held for

investment.  Property is held for investment if it produces

income in the form of interest, dividends, annuities, or

royalties not derived in the ordinary course of a trade or

business (i.e., portfolio income).  See secs. 163(d)(5)(A),

469(e)(1).  Because stock is a type of property that normally

pays dividends, it is property held for investment.  See Russon

v. Commissioner, 107 T.C. 263, 270-71 (1996).

---

[6] And there is even an exception to that exclusion--a taxpayer unable to deduct investment interest in one year may carry it forward to later years.  See sec. 163(d)(2).

[7] As we recognized in Malone v. Commissioner, T.C. Memo. 1996-408:  "The limits of section 163(d) would be undermined if taxpayers could deduct under section 212 interest which is not deductible under section 163(d)."

If Brooks used the loan to buy a stock portfolio--as he claims he did--then the interest on the loan would be attributable to the stock. See sec. 1.163-8T(c)(1), Temporary Income Tax Regs., supra. That would make interest on the loan investment interest subject to section 163(d)(1)'s limitation.

But if interest on the loan was investment interest, Brooks would've been entitled to a deduction for that interest only to the extent his investment income exceeded his investment interest and other investment expenses for 2003. Brooks has not, however, shown or argued that his investment income exceeded his investment expenses for 2003. His 2003 return reports that he had net investment income of only $25 and makes no mention of the forgiven interest. We therefore agree with the Commissioner that if Brooks had used the proceeds of the loan to purchase stocks or securities, he still wouldn't have been entitled to deduct the interest for 2003.

Since Brooks has not shown that the $144,042.35 in forgiven interest would've been deductible interest, he may not reduce his 2003 discharge-of-indebtedness income by that amount. The parties' having settled the other issues in the case,

Decision will be entered
under Rule 155.